2022 IL App (1st) 210470

No. 1-21-0470

Third Division
March 23, 2022

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| KEN MAYLE, ANTONIO CLARK, TONY SISILLIANO, ZACHARY BLEWS, and PHIL BOBROFF, | ) ) ) ) | |
| | ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | Appeal from the Circuit Court of Cook County. |
| URBAN REALTY WORKS, LLC; 660 LAKE LLC; DEMETRIOS KOULIOUFAS; HARRY KOULIOUFAS; IRENE KOULIOUFAS; ANTHONY ROUCHES; ERIC JOHNSTONE; and BAY-RON PARKER, | ) ) ) ) ) ) ) | No. 17 L 6322  The Honorable Thomas R. Mulroy, Jr., Judge Presiding. |
| Defendants | ) ) | |
| (Urban Realty Works, LLC, Demetrios Koulioufas, Irene Koulioufas, Harry Koulioufas, Anthony Rouches, and Eric Johnstone, Defendants-Appellees). | ) ) ) ) ) ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1    In 2013, plaintiffs Ken Mayle, Antonio Clark, Tony Sisilliano, Zachary Blews, and Phil Bobroff were evicted from their Chicago apartment. In the course of the eviction process, plaintiffs allege that several of the defendants unlawfully entered the premises and disposed of

plaintiffs' personal property. As a result, plaintiffs filed an 11-count complaint against defendants, alleging violations of the Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-010 *et seq.* (amended Mar. 31, 2004)) and common-law conversion. The trial court dismissed the six counts of the complaint arising under the RLTO, based on the statute of limitations, and subsequently dismissed the remaining five counts of the complaint for failure to state a cause of action. Plaintiffs appealed to this court, and we found that we lacked jurisdiction over the appeal because the court had not disposed of the claims relating to one of the defendants. *Mayle v. Urban Realty Works, LLC*, 2020 IL App (1st) 191018, ¶ 46. Upon remand, the remaining defendant was dismissed from the case, and plaintiffs again appeal. For the reasons set forth below, we affirm in part and reverse in part.

¶ 2                                               BACKGROUND

¶ 3        As noted, this is the second time this case has been before us. Since almost all of the relevant facts occurred prior to the first appeal, we take our facts from our prior opinion except where we supplement them with facts occurring subsequent to the issuance of that opinion.

¶ 4        On June 22, 2017, plaintiffs filed an 11-count complaint against defendants Urban Realty Works, LLC (Urban Realty Works); 660 Lake, LLC (660 Lake); Demetrios Koulioufas, Harry Koulioufas,[1] Irene Koulioufas, Anthony Rouches, Eric Johnstone, and Bay-Ron Parker. The complaint alleged that, in September 2012, plaintiffs moved into an apartment on Lake Street in Chicago, which was owned by Chicago Title Land Trust Company as trustee under trust number 1090074, dated June 23, 1987.[2] According to the complaint, defendants Demetrios

_____

[1]The complaint originally named as a defendant "Henry" Koulioufas, but it was amended on its face on November 27, 2017, to correct the first name of this defendant to "Harry" Koulioufas.

[2]The complaint does not set forth whether plaintiffs' tenancy was pursuant to a written lease or the length of the tenancy. However, plaintiffs' later complaints, described in further detail later in this opinion, allege that plaintiffs rented the apartment under an oral month-to-month lease.

Koulioufas, Harry Koulioufas, and Irene Koulioufas (collectively, the Koulioufas defendants) were the beneficiaries of the trust. On August 8, 2013, the trust conveyed ownership of the apartment to defendant 660 Lake. Prior to the sale, and in contemplation of the sale, the Koulioufas defendants engaged defendant Urban Realty Works to manage the premises "and to remove Plaintiffs from the Premises so that the Premises would be vacant at the time of sale." The complaint alleged that defendants Rouches, Johnstone, and Parker "acted in furtherance of the plan to remove Plaintiffs from the Premises so that the Premises would be vacant at the time of sale."

¶ 5       The complaint alleged that, on July 31, 2013, defendants Urban Realty Works and Parker served a five-day notice on " 'Josh and all occupants' "[3] of the apartment; the complaint alleged that "[d]efendants, individually or through their agents," unlawfully entered the premises to serve plaintiff Clark with the notice. Prior to receiving the notice, plaintiffs paid $1600 per month to defendant Demetrios Koulioufas.

¶ 6       The document titled "Landlord's Five Day Notice," which was attached to plaintiffs' complaint, was directed to "Josh and all occupants" and provided:

"YOU ARE HEREBY NOTIFIED that your tenancy of the following premises, to wit:

The property at [the Lake Street address] together with all buildings, sheds, closets, out-buildings, garages and other structures used in connection with said premises, will terminate on August 7th, 2013, and you are now hereby required to surrender possession of said premises to the undersigned on that day."

_____

[3]None of the plaintiffs is named Josh.

The notice was dated July 31, 2013, and was signed by "Ashley Moore" on behalf of defendant Urban Realty Works. The notice also contains an "affidavit of service" signed by defendant Parker, who was listed as the property manager, which stated that he served the notice on that date; the notice purports to be notarized, with a signature on a notary line, but bears no notary stamp, and no date is written into the space above the notary's signature line. Also attached to the complaint were copies of several canceled checks to defendants Demetrios Koulioufas and Harry Koulioufas, which were each for $1600, many of which contained the word "rent" on the memo line.

¶ 7     Count I of the complaint was against all defendants and alleged that defendants violated section 5-12-060 of the RLTO (Chicago Municipal Code § 5-12-060 (amended Nov. 6, 1991)), which provides that a tenant may obtain relief "[i]f the landlord makes an unlawful entry or a lawful entry in an unreasonable manner or makes repeated unreasonable demands for entry otherwise lawful, but which have the effect of harassing the tenant." Plaintiffs alleged that defendants violated section 5-12-060 by making an unlawful entry into the apartment.

¶ 8     Counts II through VI were by each plaintiff against all defendants, and all alleged that defendants violated section 5-12-160 of the RLTO (Chicago Municipal Code § 5-12-160 (amended Nov. 6, 1991)), which provides, in relevant part, that "[i]t is unlawful for any landlord or any person acting at his direction knowingly to oust or dispossess or threaten or attempt to oust or dispossess any tenant from a dwelling unit without authority of law *** by removing a tenant's personal property from said unit." Counts II through VI alleged that, after service of the five-day notice, between August 6 and August 21, 2013, defendants "individually or through their agents" unlawfully entered the apartment and removed and disposed of plaintiffs' personal property.

¶ 9        Counts VII through XI were by each plaintiff against all defendants and alleged conversion of personal property. Each count alleged that the named plaintiff had an absolute and unconditional right to possession of the property; that he had demanded possession of the property; and that "Defendants" wrongfully assumed control, dominion, and ownership of the property. Each count also alleged that the actions of "Defendants" were done with malicious intent. Each plaintiff also attached to the complaint itemized lists of personal items allegedly converted by defendants.

¶ 10       On October 23, 2017, defendant Rouches filed a motion to dismiss counts I through VI of the complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2016)), claiming that the building in which plaintiffs allegedly lived was commercial, not residential, meaning that the RLTO did not apply, and further claiming that plaintiffs' claims under the RLTO were time-barred.

¶ 11       On November 15, 2017, defendant Johnstone filed a combined motion to dismiss the complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2016)), seeking dismissal of counts I though IV under section 2-619 and of counts VII through XI under section 2-615 (735 ILCS 5/2-615 (West 2016)). With respect to counts I through VI, like Rouches, Johnstone claimed that the counts based on the RLTO were time-barred. With respect to counts VII through XI, Johnstone claimed that none of the counts contained specific allegations that would subject him to liability for conversion. Instead, Johnstone argued that "each Plaintiff has merely alleged conclusory legal boilerplate in support of their conversion claims, and not a single specific factual allegation as to Defendant Johnstone."

¶ 12       On November 30, 2017, the Koulioufas defendants filed a combined motion to dismiss the complaint pursuant to section 2-619.1 of the Code, claiming that counts I through VI should

be dismissed under section 2-619 because they were time-barred and that the entire complaint should be dismissed under section 2-615 for failure to plead sufficient facts to support any of plaintiffs' causes of action.

¶ 13    On January 17, 2018, the trial court entered an order dismissing counts I through VI with prejudice based on the statute of limitations. The court further struck counts VII through XI with leave to replead them.[4]

¶ 14    On March 13, 2018, plaintiffs filed an amended complaint, adding a number of factual allegations. Counts I through VI of the amended complaint were identical to the previously dismissed counts I through VI of the original complaint, repleaded to preserve them for appeal. Counts VII through XI were also identical to the prior versions of those counts, other than incorporating the additional factual allegations. The amended complaint also included the same exhibits as the original complaint, namely, the "Landlord's Five Day Notice," the cancelled checks, and the lists of personal property.

¶ 15    On April 11, 2018, defendant Johnstone filed a motion to dismiss the amended complaint pursuant to section 2-615 of the Code, claiming that the allegations of the complaint directed at him merely set forth conduct that was consistent with the usual, lawful conduct of the agent for the purchaser of a property and that plaintiffs had failed to set forth any allegations that would subject him to liability.

---

[4]We note that the trial court's order indicated that one of the motions before it was Rouches' "Motion to Dismiss (2-619.1)." However, as set forth above, Rouches did not, in fact, file a combined motion to dismiss the complaint but filed a motion to dismiss counts I through VI solely under section 2-619. Rouches did not seek to dismiss counts VII through XI but instead filed an answer to those counts. However, as plaintiffs amended their complaint twice as a result of the court's order and it is counts VII through XI of the second amended complaint at issue on appeal, we have no need to consider the impact of any error in dismissing counts VII through XI with respect to all defendants.

¶ 16      On April 16, 2018, the Koulioufas defendants filed a combined motion to dismiss counts VII through XI of the amended complaint, claiming that those counts should be dismissed under section 2-615 because they failed to plead specific allegations of ultimate fact for each element of a conversion claim. The Koulioufas defendants further claimed that counts VII through XI should be dismissed under section 2-619 because plaintiffs failed to plead that an agency relationship existed that would subject the Koulioufas defendants to liability.

¶ 17      Attached to the Koulioufas defendants' motion to dismiss, in support of their section 2-619 motion, were the affidavits of the three Koulioufas defendants, in which they averred that they never retained defendant Urban Realty Works in connection with the property; they never engaged or asked defendants Rouches, Johnstone, or Parker to deal in any way with any person at the property; they never asked anyone to serve any notices concerning the property; and they never removed any personal property from the property and never asked anyone to do so. The Koulioufas defendants further averred that plaintiffs never informed any of them that plaintiffs' personal property had been taken and never made a demand for the return of any such property.

¶ 18      On April 23, 2018, defendant Rouches filed a combined motion to dismiss the amended complaint, claiming that counts VII through XI should be dismissed pursuant to section 2-615 of the Code because any specific allegations directed at Rouches merely described conduct that was consistent with the usual, lawful manner of a real estate sale and the allegations related to the alleged removal of plaintiffs' personal property were vague and insufficient to impose liability on Rouches.

¶ 19      On June 27, 2018, the trial court entered an order granting the motions to dismiss based on section 2-615 but granted plaintiffs leave to file an amended complaint.

¶ 20      On September 20, 2018, plaintiffs filed a second amended complaint, adding additional factual allegations. The second amended complaint alleged that, in August 2009, plaintiff Bobroff began renting the apartment, which was a "residential loft-style second floor apartment," from defendant Harry Koulioufas pursuant to an oral month-to-month tenancy; plaintiff Bobroff paid defendant Harry Koulioufas $500 as a security deposit. In 2012, the other four plaintiffs moved into the apartment, each paying a $500 security deposit. During their tenancy, plaintiffs would collect their mail and pay rent to defendant Harry Koulioufas at the restaurant on the ground floor of the building next door, which was owned by defendants Demetrios and Harry Koulioufas. The restaurant closed in May 2013, and plaintiffs observed a note posted on the door to the restaurant directing them to pay their rent to defendant Demetrios Koulioufas, which they did.

¶ 21      The second amended complaint alleged that, in June 2013, plaintiffs noticed defendants Rouches and Johnstone at the building in which the apartment was located (the property). They advised plaintiff Bobroff that defendant Harry Koulioufas "was 'gone,' that the Property had been sold and that Plaintiffs had 'had a good run, but it's over.' " They also advised plaintiff Bobroff that plaintiffs would be required to vacate the apartment by August 1, 2013. Plaintiffs informed defendants Rouches and Johnstone that they needed more time to vacate the apartment. Defendants Rouches and Johnstone also asked plaintiffs to allow architects into the apartment, which plaintiffs permitted.

¶ 22      The second amended complaint alleged that, in July and August 2013, defendants Rouches, Johnstone, and Parker had meetings in the closed restaurant with several of the plaintiffs individually. During those meetings, defendants Rouches and Johnstone "made vague offers to Plaintiffs about offering assistance to Plaintiffs to move." They stated that they would not

offer plaintiffs any money but would provide them with movers; defendants Rouches and Johnstone told plaintiff Bobroff that " 'August 1st is our key date.' " Plaintiffs did not reach any agreements with defendants Rouches and Johnstone during those meetings, and defendants Rouches and Johnstone told plaintiff Bobroff that " '[w]e hire people that professionally do this,' " meaning having plaintiffs removed from the apartment. On the day of his meeting, plaintiff Bobroff asked defendant Johnstone for a business card; defendant Johnstone replied by falsely asserting that he worked for "RPM Assets."

¶ 23    The second amended complaint alleges that, during his meeting, defendant Parker told plaintiff Mayle that any discussions about his being able to remain in the apartment needed to take place with defendant Johnstone. Defendant Parker later told plaintiff Mayle that he had discussed the situation with defendants Johnstone and Rouches and they had decided to evict plaintiffs.

¶ 24    The second amended complaint alleged that, on July 31, 2013, defendants Urban Realty Works and Parker served a "Landlord's Five Day Notice" on " 'Josh and all occupants' " of the apartment; defendant Rouches was present when the notice was delivered. However, no one named "Josh" resided in the apartment, and plaintiffs did not know anyone named "Josh." On the same day, plaintiffs Clark and Sisilliano observed defendant Parker break down the front door of the apartment. Also on July 31, 2013, "Defendants moved several people who were strangers to Plaintiffs," including defendant Parker, into the apartment. The people moving into the apartment told plaintiff Mayle that they were being paid by defendant Johnstone. Shortly thereafter, defendant Johnstone came to the property and told plaintiff Mayle that Mayle "had to 'get out' of the Apartment."

¶ 25    The second amended complaint alleged that on August 2, 2013, plaintiff Mayle sent an e-mail to the e-mail address posted on the door of the restaurant next door, asking for information about what was happening at the apartment, asking that a broken lock be repaired, and asking whether an eviction lawsuit had been filed against any of the plaintiffs. The next day, plaintiff Mayle received a response providing: " 'You guys are fine for right now. We need access to the building. I'll get the locks fixed. We'll figure something out with you guys. We aren't going to start any work on the building this month. Maybe to do some repairs. I'll be in touch with you in a few days. What is your phone number?' " Plaintiff Mayle responded the next day with his phone number.

¶ 26    The second amended complaint alleged that on August 6, 2013, plaintiff Bobroff returned to the apartment to find that "Defendants" had caused his personal belongings to be removed from the apartment and left out in the rain. "Defendants" also caused the steel door dividing plaintiff Bobroff's portion of the apartment from the rest of the space to be locked and placed a mechanical device on the door to prevent it from being opened. The second amended complaint alleged that defendant Parker "and his associates physically prevented Plaintiffs from having full access to the Apartment." On the same day, defendant Rouches called plaintiff Mayle at least four times. The next day, defendant Rouches also sent plaintiff Mayle several text messages.

¶ 27    The second amended complaint alleged that on August 9, 2013, defendant Rouches sent plaintiff Mayle a text message indicating that the locks would be changed and asking whether " 'almost everyone [was] out.' " On the same day, "[d]efendants" caused all of the personal property in the apartment belonging to plaintiff Blews to be removed from the apartment and thrown into the garbage. On August 10, 2013, "Defendants" caused the locks to the apartment

door to be changed and refused to provide keys to plaintiffs. On the same day, plaintiff Mayle sent defendant Rouches a text message asking for defendant Parker's phone number, saying that he had observed Parker changing the lock and Parker had not left a key. Defendant Rouches responded by providing plaintiff Mayle defendant Parker's phone number the next day. On August 11, 2013, plaintiff Mayle hired a locksmith to attempt to regain access to the apartment, but defendant Parker's "associates" prevented the locksmith from attempting to access the apartment.

¶ 28    The second amended complaint alleged that on August 9, 2013, the trust that owned the property conveyed ownership of the property to defendant 660 Lake and that, at the time the majority of plaintiffs' personal property was removed, the trust still held legal title to the property. The second amended complaint alleged that, on information and belief, defendant Johnstone was a member and the registered agent of defendant 660 Lake. The second amended complaint further alleged that, on information and belief, defendant Rouches was the manager and a member of defendant Urban Realty Works. The amended complaint alleged that defendants Rouches, Johnstone, and Parker "acted in furtherance of the plan to remove Plaintiffs from the Apartment so that the Apartment would be vacant." Finally, the amended complaint alleged that on August 22, 2013, "Defendants" caused plaintiffs' remaining personal property to be removed from the apartment and thrown into the garbage.

¶ 29    The second amended complaint again repleaded counts I through VI to preserve them for appeal. As with the amended complaint, the second amended complaint also realleged the allegations of counts VII through XI, with the only change being the incorporation of the additional factual allegations as set forth above.

¶ 30        On October 1, 2018, defendant Johnstone filed a motion to dismiss the second amended complaint pursuant to section 2-615 of the Code, claiming that the second amended complaint merely repleaded the same insufficient allegations as in the previous complaint. Defendant Johnstone claimed that the few new allegations were vague and did not cure the defects of the previously-dismissed amended complaint.

¶ 31        On October 2, 2018, the Koulioufas defendants filed a combined motion to dismiss counts VII through XI of the second amended complaint, claiming that the second amended complaint failed to cure the defects of the prior pleadings and should be dismissed under section 2-615 of the Code. They also claimed that the second amended complaint should be dismissed under section 2-619 because their affidavits showed that they were entitled to judgment as a matter of law. In support of their section 2-619 motion, the Koulioufas defendants attached to the motion to dismiss the same affidavits as had been attached to their prior motion to dismiss.

¶ 32        On October 9, 2018, defendant Rouches filed a combined motion to dismiss the second amended complaint, claiming that counts VII through XI of the second amended complaint should be dismissed under section 2-615 because they failed to allege sufficient facts to support a cause of action.

¶ 33        On November 15, 2018, the trial court entered an order dismissing counts VII through XI of the second amended complaint with prejudice with respect to defendants Rouches, Johnstone, and the Koulioufas defendants. On the same day, the trial court entered an order finding defendants Urban Realty Works and 660 Lake in default for failure to appear. On February 21, 2019, plaintiffs filed a motion for a default judgment against defendants Urban Realty Works and 660 Lake, and on February 28, 2019, the trial court entered judgment against them with respect to each plaintiff.

¶ 34   On March 8, 2019, defendant Urban Realty Works filed its appearance and, on March 11, 2019, it filed a motion to vacate the default judgment. On the same day, it filed a combined motion to dismiss the second amended complaint, arguing that counts VII through XI should be dismissed under section 2-615 for failure to state a claim. On April 16, 2019, the trial court granted defendant Urban Realty Works' motion to vacate the default judgment and also granted its motion to dismiss.

¶ 35   On May 15, 2019, plaintiffs filed a notice of appeal. However, on March 26, 2020, we dismissed the appeal for lack of jurisdiction. *Mayle*, 2020 IL App (1st) 191018, ¶ 46. We found that, despite his lack of participation in the case, the claims against defendant Parker remained pending, meaning that the orders appealed from were not final and appealable unless the trial court first made findings pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), which it did not do. *Mayle*, 2020 IL App (1st) 191018, ¶¶ 39, 44.

¶ 36   After the case was remanded, plaintiffs again attempted to serve defendant Parker but were unsuccessful. Consequently, on April 21, 2020, the trial court entered an order dismissing the claims against Parker pursuant to Illinois Supreme Court Rule 103(b) (eff. July 1, 2007). On April 26, 2021, plaintiffs again filed a notice of appeal, and this appeal follows.

¶ 37                                   ANALYSIS

¶ 38   On appeal, plaintiffs challenge the dismissal of each count of their complaint. In the case at bar, the defendants filed motions to dismiss at various times, most filed pursuant to section 2-619.1 of the Code, which permits a party to file a motion to dismiss based on both section 2-615 and section 2-619 of the Code. 735 ILCS 5/2-619.1 (West 2018). In its dismissal orders, the trial court did not specify the basis for dismissal with respect to each defendant, so we set forth the relevant standards for reviewing dismissal under both sections of the Code.

¶ 39     A motion to dismiss under section 2-615 of the Code challenges the legal sufficiency of the complaint by alleging defects on its face. *Young v. Bryco Arms*, 213 Ill. 2d 433, 440 (2004); *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). The critical inquiry is whether the allegations in the complaint are sufficient to state a cause of action upon which relief may be granted. *Wakulich*, 203 Ill. 2d at 228. In making this determination, all well-pleaded facts in the complaint and all reasonable inferences that may be drawn from those facts are taken as true. *Young*, 213 Ill. 2d at 441. In addition, we construe the allegations in the complaint in the light most favorable to the plaintiff. *Young*, 213 Ill. 2d at 441. We review *de novo* an order granting a section 2-615 motion to dismiss. *Young*, 213 Ill. 2d at 440; *Wakulich*, 203 Ill. 2d at 228. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 40     A motion to dismiss under section 2-619 admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83 (citing *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)). When reviewing a motion to dismiss under section 2-619, "a court must accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). Additionally, a cause of action should not be dismissed under section 2-619 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003). As with a section 2-615 motion, for a section 2-619 dismissal, our standard of review is

*de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006); *Morr-Fitz, Inc.*, 231 Ill. 2d at 488. As noted, *de novo* consideration means we perform the same analysis that a trial judge would perform. *Khan*, 408 Ill. App. 3d at 578. Additionally, as with a section 2-615 dismissal, even if the trial court dismissed on an improper ground, a reviewing court may affirm the dismissal if the record supports a proper ground for dismissal. See *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004) (when reviewing a section 2-619 dismissal, we can affirm "on any basis present in the record"); *In re Marriage of Gary*, 384 Ill. App. 3d 979, 987 (2008) ("we may affirm on any basis supported by the record, regardless of whether the trial court based its decision on the proper ground").

¶ 41                                    I. RLTO Counts

¶ 42        The trial court first dismissed counts I through VI of the complaint, based on violations of the RLTO, because it found that the statute of limitations barred plaintiffs' claims. Section 2-619(a)(5) provides that a defendant may file a motion for dismissal when an action has not been commenced within the time limited by law. 735 ILCS 5/2-619(a)(5) (West 2018). The defendant has the initial burden of proving the affirmative defense relied upon in its motion to dismiss. *Kirby v. Jarrett*, 190 Ill. App. 3d 8, 12 (1989) (explaining that a defendant raising a statute of limitations defense in a motion to dismiss bears the initial burden of demonstrating that the action in question was not commenced within the applicable limitation period). Once the defendant has met this burden, however, it becomes incumbent upon the plaintiff to set forth facts sufficient to avoid the statutory limitation. *Cundiff v. Unsicker*, 118 Ill. App. 3d 268, 272 (1983); *Blair v. Blondis*, 160 Ill. App. 3d 184, 188 (1987) (explaining that a plaintiff seeking to come within the discovery rule exception to the limitations period has the burden of proving the date of discovery).

¶ 43    In the case at bar, count I of the complaint was based on violation of section 5-12-060 of the RLTO (Chicago Municipal Code § 5-12-060 (amended Nov. 6, 1991)), while counts II through VI were based on violations of section 5-12-160 of the RLTO (Chicago Municipal Code § 5-12-160 (amended Nov. 6, 1991)).

¶ 44    Section 5-12-060 of the RLTO concerns "[r]emedies for improper denial of access" and provides, in relevant part:

> "If the landlord makes an unlawful entry or a lawful entry in an unreasonable manner or makes repeated unreasonable demands for entry otherwise lawful, but which have the effect of harassing the tenant, the tenant may obtain injunctive relief to prevent the recurrence of the conduct, or terminate the rental agreement pursuant to the notice provisions of Section 5-12-110(a). In each case, the tenant may recover an amount equal to not more than one month's rent or twice the damage sustained by him, whichever is greater." Chicago Municipal Code § 5-12-060 (amended Nov. 6, 1991).

¶ 45    Section 5-12-160 of the RLTO concerns the "[p]rohibition on interruption of tenant occupancy by landlord" and provides, in relevant part:

> "If a tenant in a civil legal proceeding against his landlord establishes that a violation of this section has occurred he shall be entitled to recover possession of his dwelling unit or personal property and shall recover an amount equal to not more than two months' rent or twice the actual damages sustained by him, whichever is greater." Chicago Municipal Code § 5-12-160 (amended Nov. 6, 1991).

¶ 46    All parties acknowledge that the RLTO does not explicitly provide for a specific statute of limitations for violations of the ordinance. Thus, we look to the Code to provide the appropriate statute of limitations. However, the parties disagree as to which section of the Code is

16

applicable to plaintiffs' claims. Defendants argue that section 13-202 of the Code, which provides for a two-year statute of limitations for actions "for a statutory penalty" (735 ILCS 5/13-202 (West 2018)) governs plaintiffs' RLTO claims. Plaintiffs, by contrast, argue that the appropriate statute of limitations is the one set forth in section 13-205 of the Code, which provides that actions "to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205 (West 2018). Given the fact that the conduct at issue occurred in 2013, the difference between the two statutes of limitation determines whether plaintiffs' 2017 complaint was timely filed or not.

¶ 47        While there is no case law analyzing the appropriate statute of limitations for violations of sections 5-12-060 and 5-12-160, several courts have considered the issue with respect to certain other sections of the RLTO. Thus, we begin with a discussion of those cases.

¶ 48        Our supreme court discussed the statute of limitations applicable to section 5-12-080 of the RLTO (Chicago Municipal Code § 5-12-080 (amended at Chi. City Clerk J. Proc. 45,166, 45,168 (May 14, 1997))) in *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1 (2009). At the time, section 5-12-080(f), which concerned security deposits, provided:

> "If the landlord or landlord's agent fails to comply with any provision of Section[s] 5-12-080(a)-(e), the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest at a rate determined in accordance with Section 5-12-081. This subsection does not preclude the tenant from recovering other damages to which he may be entitled under this chapter." Chicago Municipal Code § 5-12-080(f) (amended at Chi. City Clerk J. Proc. 45,166, 45,168 (May 14, 1997)).

The trial court found that the two-year statute of limitations set forth in section 13-202 of the Code applied to claims under section 5-12-080 of the RLTO, making the plaintiffs' complaint untimely, and the appellate court affirmed. *Landis*, 235 Ill. 2d at 4.

¶ 49     The issue before the supreme court was whether a violation of section 5-12-080 was a "statutory penalty" such that section 13-202 of the Code governed. After finding that section 13-202 applied to ordinances such as the RLTO, the supreme court considered whether a suit alleging a violation of section 5-12-080 constituted an action for damages "for a statutory penalty" such that the two-year statute of limitations applied. The court noted that it had previously defined a " 'penalty' " as " 'in the nature of punishment for the nonperformance of an act or for the performance of an unlawful act.' " *Landis*, 235 Ill. 2d at 12 (quoting *Hoffmann v. Clark*, 69 Ill. 2d 402, 429 (1977)). The court further noted that "a penal statute 'subjects one person to the payment of a sum of money to another without reference to any actual injury and without requiring him to allege or prove an actual injury.' " *Landis*, 235 Ill. 2d at 12-13 (quoting *Babcock v. Harrsch*, 310 Ill. 413, 417 (1923)). The court identified three factors to determine whether a statute provided for a statutory penalty:

> "[A] statutory penalty must: (1) impose automatic liability for a violation of its terms; (2) set forth a predetermined amount of damages; and (3) impose damages without regard to the actual damages suffered by the plaintiff." *Landis*, 235 Ill. 2d at 13 (citing *McDonald's Corp. v. Levine*, 108 Ill. App. 3d 732, 738 (1982), citing *Hoffmann*, 69 Ill. 2d at 429).

By contrast, "a statute is remedial where it 'imposes liability only when actual damage results from a violation' and where 'liability is contingent upon damage being proven by the

plaintiff.' " *Landis*, 235 Ill. 2d at 13 (quoting *Levine*, 108 Ill. App. 3d at 738, citing *M.H. Vestal Co. v. Robertson*, 277 Ill. 425, 429-30 (1917)).

¶ 50       In examining the factors, the supreme court found that section 5-12-080(f) provided for a statutory penalty. First, it found that section 5-12-080(f) imposes automatic liability for a violation of its terms, using the mandatory term "shall" in providing that a tenant " 'shall be awarded' " damages upon a violation of its terms. *Landis*, 235 Ill. 2d at 13 (quoting Chicago Municipal Code § 5-12-080(f) (amended at Chi. City Clerk J. Proc. 45,166, 45,168 (May 14, 1997))). Second, it found that section 5-12-080(f) sets forth a predetermined amount of damages because it provides a formula for a court to use in calculating damages to be awarded to the plaintiff. *Landis*, 235 Ill. 2d at 14. Finally, the court found that, in contrast to other sections of the RLTO, including section 5-12-060, section 5-12-080(f) does not specifically allow a plaintiff to recover actual damages and, indeed, under the terms of the section, it is "irrelevant whether plaintiffs have suffered actual damages." *Landis*, 235 Ill. 2d at 14. Consequently, the supreme court found that section 5-12-080(f) was a "statutory penalty" under section 13-202 and, therefore, was subject to the two-year statute of limitations. *Landis*, 235 Ill. 2d at 15.

¶ 51       In its analysis, the *Landis* court cited two appellate court decisions analyzing other sections of the RLTO: *Namur v. The Habitat Co.*, 294 Ill. App. 3d 1007 (1998), and *Sternic v. Hunter Properties, Inc.*, 344 Ill. App. 3d 915 (2003). While defendants claim that the supreme court did not express its approval of these cases, both cases were cited in support of the proposition that a statute may set forth a predetermined amount of damages if it provides a formula for a

court to use in calculating damages. See *Landis*, 235 Ill. 2d at 14.[5] Accordingly, we find it useful to consider these cases in our analysis, as well.

¶ 52      In *Namur*, as in *Landis*, the court considered whether section 5-12-080 of the RLTO provided for a "statutory penalty" such that the two-year statute of limitations applied and also engaged in the same analysis with respect to section 5-12-170 of the RLTO, which provided that a tenant "shall be entitled to recover $100.00 in damages" for violation of the section (Chicago Municipal Code § 5-12-170 (amended at Chi. City Clerk J. Proc. 7196, 7219 (Nov. 6, 1991))). The *Namur* court noted the distinction between a penal and a remedial statute, observing that a statute is penal "if it imposes automatic liability for a violation of its terms and if the amount of liability is predetermined by the statute and imposed without actual damages suffered by the plaintiff." *Namur*, 294 Ill. App. 3d at 1010-11 (citing *Levine*, 108 Ill. App. 3d at 738). By contrast, "[a] statute is remedial where it imposes liability only for actual damages resulting from a violation." *Namur*, 294 Ill. App. 3d at 1011 (citing *Levine*, 108 Ill. App. 3d at 738).

¶ 53      The *Namur* court observed that some portions of the RLTO were remedial because they permitted the recovery of actual damages. *Namur*, 294 Ill. App. 3d at 1011. As an example, the court pointed to section 5-12-060, which permitted the tenant to recover actual damages for the landlord's unlawful entry, up to one month's rent, and permitted the landlord to recover actual damages for the tenant's refusal to allow lawful access. *Namur*, 294 Ill. App. 3d at 1011 (citing Chicago Municipal Code § 5-12-060 (amended Nov. 6, 1991)). The court found that the sections at issue before it, sections 5-12-080(f) and 5-12-170, were penal "because they

---

[5]We also note that both cases were also cited as examples of cases in which courts had found that an ordinance may be a "statutory" penalty under section 13-202. See *Landis*, 235 Ill. 2d at 7.

specify either the amount of damages that can be awarded for violations or the formula by which the amount of damages is to be calculated," instead of relying on actual damages. *Namur*, 294 Ill. App. 3d at 1011.

¶ 54    The *Namur* court then considered whether violation of the RLTO was considered a "statutory" penalty under section 13-202. In discussing this issue, the *Namur* court set out the familiar principles of statutory interpretation and then briefly discussed several cases in which section 13-202 had been applied to statutes. See *Namur*, 294 Ill. App. 3d at 1011-12. The *Namur* court noted that section 13-202 had been applied to an action under a statute that did not permit recovery for actual damages but specified a formula by which damages were to be calculated. *Namur*, 294 Ill. App. 3d at 1011-12 (citing *Sun Theatre Corp. v. RKO Radio Pictures*, 213 F.2d 284, 286-88 (7th Cir. 1954)). By contrast, section 13-202 had been found not to apply to an action under a statute that imposed actual damages and exemplary damages with a cap. *Namur*, 294 Ill. App. 3d at 1012 (citing *Dawson v. W.&H. Voortman, Ltd.*, 864 F. Supp. 77, 79 (N.D. Ill. 1994)). The *Namur* court also discussed a California case in which California law provided that a statute that provided for treble damages was penal in nature. *Namur*, 294 Ill. App. 3d at 1012 (citing *Menefee v. Ostawari*, 278 Cal. Rptr. 805, 807 (Ct. App. 1991)). After discussing these cases, the *Namur* court proceeded to analyze whether an ordinance was a "statute" for purposes of section 13-202 of the Code, ultimately concluding that it was. *Namur*, 294 Ill. App. 3d at 1013.

¶ 55    In *Sternic*, the appellate court relied on the reasoning in *Namur* in considering whether violations of sections 5-12-150 and 5-12-110(e) (Chicago Municipal Code §§ 5-12-150 (amended Nov. 6, 1991); Chicago Municipal Code § 5-12-110(e) (amended at Chi. City Clerk J. Proc. 7196, 7210 (Nov. 6, 1991))) constituted statutory penalties for purposes of section 13-

202. Section 5-12-150 provided that, in cases of retaliatory conduct by a landlord, the tenant "shall recover possession or terminate the rental agreement and, in either case, recover an amount equal to and not more than two months' rent or twice the damages sustained by him, whichever is greater, and reasonable attorneys' fees" (Chicago Municipal Code § 5-12-150 (amended Nov. 6, 1991)), while section 5-12-110(e) provided that, if there was material noncompliance with the rental agreement by the landlord, the tenant "may obtain injunctive relief, and/or recover damages by claim or defense" (Chicago Municipal Code § 5-12-110(e) (amended at Chi. City Clerk J. Proc. 7196, 7210 (Nov. 6, 1991))).

¶ 56    The *Sternic* court noted that the RLTO had been found to contain both statutory penalties and remedial provisions. *Sternic*, 344 Ill. App. 3d at 918. The court explained that "[p]rovisions are penal when 'they specify either the amount of damages that can be awarded for violations or the formula by which the amount of damages is to be calculated' " (*Sternic*, 344 Ill. App. 3d at 918 (quoting *Namur*, 294 Ill. App. 3d at 1011)), while "[p]rovisions are remedial when they permit the recovery of actual damages" (*Sternic*, 344 Ill. App. 3d at 918 (citing *Namur*, 294 Ill. App. 3d at 1011)). The *Sternic* court further noted that, in *Namur*, that court had found that "section 13-202 does not apply where a plaintiff may recover 'actual damages and exemplary damages with a cap.' " *Sternic*, 344 Ill. App. 3d at 918 (quoting *Namur*, 294 Ill. App. 3d at 1012).

¶ 57    Considering the provisions before it, the *Sternic* court found that "[s]ection 13-202 does not apply here because the damages provided in sections 5-12-150 and 5-12-110(e) of the [RLTO] are contingent on actual damages." *Sternic*, 344 Ill. App. 3d at 918. The court noted that, while section 5-12-150 authorized exemplary damages, the amount was capped at the greater of two months' rent or twice the plaintiff's actual damages, which was "the exact

provision found to be excepted from the section 13-202 time limits in *Namur*." *Sternic*, 344 Ill. App. 3d at 918-19. Additionally, the court found that sections 5-12-150 and 5-12-110(e) were not "statutory penalties" because they did not specify an amount to be awarded for violations or a formula for calculating an award without regard to the actual damages suffered by the plaintiff. *Sternic*, 344 Ill. App. 3d at 919. The court noted that "[e]ven the two-months' rent liability stated in section 5-12-150 is related to the actual damages because it can be imposed only if it is greater than twice the actual damages." *Sternic*, 344 Ill. App. 3d at 919. Accordingly, the *Sternic* court found that section 13-202 did not apply and the applicable statute of limitations was the five-year limitations period set forth in section 13-205 of the Code. *Sternic*, 344 Ill. App. 3d at 919.

¶ 58        In the case at bar, after examining the language of the sections at issue and considering the case law interpreting other sections of the RLTO, we agree with plaintiffs that section 13-202 does not apply because violations of sections 5-12-060 and 5-12-160 do not constitute statutory penalties. As noted, our supreme court has explained that "a statutory penalty must: (1) impose automatic liability for a violation of its terms; (2) set forth a predetermined amount of damages; and (3) impose damages without regard to the actual damages suffered by the plaintiff." *Landis*, 235 Ill. 2d at 13 (citing *Levine*, 108 Ill. App. 3d at 738, citing *Hoffmann*, 69 Ill. 2d at 429). We cannot find that either section meets this standard.

¶ 59        With respect to section 5-12-060, the ordinance provides that "the tenant may recover an amount equal to not more than one month's rent or twice the damage sustained by him, whichever is greater." Chicago Municipal Code § 5-12-060 (amended Nov. 6, 1991). First, we cannot find that this section imposes automatic liability for a violation of its terms. In *Landis*, the supreme court pointed to the ordinance's use of the term "shall" in finding that section 5-

12-080(f) imposed automatic liability for a violation of its terms. *Landis*, 235 Ill. 2d at 13. Here, however, section 5-12-060 uses the permissive term "may," instead of the mandatory "shall," suggesting that liability is not automatic. See *People v. Reed*, 177 Ill. 2d 389, 393 (1997) (legislative use of the word "may" generally indicates a permissive or directory reading, while use of the word "shall" generally expresses a mandatory reading).

¶ 60     Additionally, we cannot find that section 5-12-060 sets forth a predetermined amount of damages or imposes damages without regard to the actual damages suffered by plaintiffs. We are unpersuaded by defendants' contention that plaintiffs may recover a predetermined monetary award for a violation of section 5-12-060 without proving actual damages because the section permits them to recover one month's rent. Defendants' argument repeatedly omits the fact that the section provides for one month's rent "*or twice the damage sustained by him, whichever is greater.*" (Emphasis added.) Chicago Municipal Code § 5-12-060 (amended Nov. 6, 1991). As was the case in *Sternic*, section 5-12-060 requires an assessment of actual damages, because a tenant may only recover one month's rent if it is greater than twice the amount of actual damages. Accordingly, the relief provided by the ordinance is dependent on the amount of actual damages. Indeed, our supreme court in *Landis* expressly distinguished section 5-12-060 from the section that it was analyzing *because* section 5-12-060 specifically allowed a plaintiff to recover actual damages. See *Landis*, 235 Ill. 2d at 14. Similarly, the *Namur* court specifically cited section 5-12-060 as an example of a "remedial" provision of the RLTO, again because the section permits the recovery of actual damages. See *Namur*, 294 Ill. App. 3d at 1011. We cannot agree with defendants that actual damages are irrelevant to the relief available under section 5-12-060. Instead, we agree with plaintiffs that section 5-12-060

is a remedial provision and, therefore, a five-year statute of limitations applies to plaintiffs' claims.

¶ 61     We also find unpersuasive defendants' reading of *Landis*, which they claim demonstrates that section 5-12-060 is not a remedial provision. As we have noted several times throughout our analysis, the *Landis* court set forth three factors that it found "accurately summarize Illinois law with respect to th[e] issue" of whether a statute is penal. *Landis*, 235 Ill. 2d at 13. The supreme court explained that "a statutory penalty must: (1) impose automatic liability for a violation of its terms; (2) set forth a predetermined amount of damages; and (3) impose damages without regard to the actual damages suffered by the plaintiff." *Landis*, 235 Ill. 2d at 13 (citing *Levine*, 108 Ill. App. 3d at 738, citing *Hoffmann*, 69 Ill. 2d at 429). The court then explained that, "[b]y contrast, a statute is remedial where it 'imposes liability only when actual damage results from a violation' and where 'liability is contingent upon damage being proven by the plaintiff.' " *Landis*, 235 Ill. 2d at 13 (quoting *Levine*, 108 Ill. App. 3d at 738, citing *Robertson*, 277 Ill. at 429-30).

¶ 62     Defendants focus heavily on the word "only" contained in the latter quote, claiming that the use of the word represents the supreme court's "holding" that a statute may only be considered remedial if liability is exclusively based on proving actual damages. Thus, in their view, if the statute contains any aspect of predetermined damages, the statute as a whole is penal and not remedial. Defendants offer no case law demonstrating that any other court has interpreted *Landis* in such a way, and we cannot find that this is an accurate reading of the *Landis* decision.

¶ 63     First, we note that the supreme court itself has not placed the same weight on its use of the word "only" when discussing its own decision. In *Goldfine v. Barack, Ferrazzano, Kirschbaum*

*& Perlman*, 2014 IL 116362, ¶¶ 31-32, the supreme court discussed *Landis* in setting forth the law on determining whether a statutory provision is punitive or remedial. The *Goldfine* court first set forth the three-factor analysis for determining whether a provision constitutes a statutory penalty. *Goldfine*, 2014 IL 116362, ¶ 31. The court then continued:

> "A remedial statute, on the other hand, imposes liability for actual damages suffered by the plaintiff as a result of a violation of the statute. [Citation.] Liability under a remedial statute is contingent upon damage being proven by the plaintiff. [Citation.]" (Internal quotation marks omitted.) *Goldfine*, 2014 IL 116362, ¶ 32.

Thus, when setting forth the applicable law, the supreme court itself did not even use the word "only," suggesting that its use is not as critical to the court's analysis as defendants claim. We must also note that, in a different context, the supreme court *has* found that a statute containing a provision including liquidated damages could nevertheless be remedial, further suggesting that defendants' interpretation of the supreme court's holding is overly restrictive. See *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶¶ 29-34 (finding that a provision permitting recovery of actual damages or $500, whichever is greater, in the Telephone Consumer Protection Act of 1991 (47 U.S.C. § 227(b)(3) (2006)) was not penal).

¶ 64     Additionally, defendants' interpretation of the *Landis* court's discussion of a remedial statute is inconsistent with the opinion as a whole. While the *Landis* court set forth a brief explanation of what makes a statute remedial, it conducted its actual analysis of the provision before it by applying the three-factor test to determine if it constituted a statutory penalty. Under defendants' interpretation of the law, the supreme court would not have needed to engage in that analysis at all—it could simply have concluded that the provision was a penalty because it did not impose liability "only" when actual damages resulted from a violation.

Similarly, if defendants' interpretation was correct, the supreme court would not have cited section 5-12-060 as a counterexample when finding that section 5-12-080(f) was penal because section 5-12-060 provides for liability even when the amount of actual damages is zero. See *Landis*, 235 Ill. 2d at 14.

¶ 65    In the case at bar, we take the same approach the *Landis* court did, namely, applying the three-factor analysis to determine whether section 5-12-060 provides for a statutory penalty. As explained above, after considering those factors, we find that section 5-12-060 is remedial, not penal, and is therefore subject to a five-year statute of limitations.

¶ 66    We reach the same conclusion with respect to section 5-12-160, which provides that a tenant establishing a violation of the section "shall recover an amount equal to not more than two months' rent or twice the actual damages sustained by him, whichever is greater." Chicago Municipal Code § 5-12-160 (amended Nov. 6, 1991). While this section's use of the word "shall" suggests automatic liability for violation of its terms (see *Landis*, 235 Ill. 2d at 13), the remainder of our section 5-12-060 analysis applies equally to section 5-12-160. As with section 5-12-060, section 5-12-160 is dependent on the amount of actual damages suffered by a plaintiff because a plaintiff may only recover two months' rent if that amount is greater than twice the actual damages sustained by the plaintiff. Otherwise, the plaintiff is permitted to recover actual damages. Consequently, as with section 5-12-060, section 5-12-160 represents a remedial provision of the RLTO and is subject to the five-year statute of limitations set forth in section 13-205 of the Code.

¶ 67    However, even though we have determined that plaintiffs' RLTO counts are not time-barred, certain defendants claim that dismissal was nevertheless appropriate under section 2-615 of the Code for failure to state a cause of action. As noted, even if the trial court dismissed

on an improper ground, a reviewing court may affirm the dismissal if the record supports a proper ground for dismissal. See *Raintree Homes*, 209 Ill. 2d at 261; *Gary*, 384 Ill. App. 3d at 987. Consequently, we may consider whether section 2-615 provides an alternate basis for dismissal.

¶ 68     Before considering this argument, we note that this alternative argument is not applicable to all defendants. In their brief on appeal, only defendants Rouches and Johnstone claim that counts I through VI fail to state a cause of action with respect to them; despite the fact that defendants Rouches, Johnstone, and Urban Realty Works filed a joint appellate brief, there is no claim that counts I through VI fail to state a cause of action against defendant Urban Realty Works. Similarly, while the Koulioufas defendants in their brief "adopt and incorporate by this reference the points and authorities asserted" by the other defendants as to the RLTO counts, the Koulioufas defendants do not specifically claim that counts I through VI fail to state a cause of action against them. Since the arguments made by defendants Rouches and Johnstone are specific to the allegations against them, merely "adopt[ing]" those arguments does not address the adequacy of the specific allegations against the Koulioufas defendants. Accordingly, we consider only whether counts I through VI fail to state a cause of action against defendants Rouches and Johnstone and reverse the dismissal of those counts against the remaining defendants.

¶ 69     We also note that neither defendant Rouches nor defendant Johnstone sought dismissal of the RLTO counts for failure to state a cause of action under section 2-615; indeed, only the Koulioufas defendants did so, with defendants Rouches and Johnstone seeking dismissal of the RLTO counts solely under section 2-619, and defendant Urban Realty Works becoming involved with the case only after the dismissal of those counts. However, while an appellant

may not raise a point for the first time on appeal, an appellee may argue any point in support of the judgment on appeal, even if it was not ruled on by the trial court, so long as the factual basis for that point was before the trial court. *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶ 31; *Mayfield v. ACME Barrel Co.*, 258 Ill. App. 3d 32, 37 (1994). Because defendants' arguments rest on the sufficiency of the complaint, we consider whether dismissal under section 2-615 was appropriate as an alternate basis for affirming the trial court's judgment with respect to defendants Rouches and Johnstone.

¶ 70    Finally, we must note that, in their brief, defendants Rouches and Johnstone discuss the adequacy of the allegations contained in the second amended complaint when claiming that the RLTO counts fail to state a cause of action. However, the operative complaint at the time the RLTO counts were dismissed was plaintiffs' original complaint. When those counts were dismissed with prejudice on January 17, 2018, plaintiffs expressly noted in their subsequent amended complaints that "[t]hese Counts are re-pled solely to preserve Plaintiffs' right to appeal the Court's ruling, if necessary." The RLTO counts were never subject to a section 2-615 dismissal for failure to state a cause of action with respect to defendants Rouches and Johnstone, and therefore, the amendments that were made in subsequent complaints were geared toward the deficiencies in plaintiffs' conversion counts, not the RLTO counts. It would be pure speculation for us to assume that (1) plaintiffs' RLTO counts would have been dismissed for failure to state a cause of action if they had not been dismissed on statute of limitations grounds and (2) plaintiffs would have amended their complaint in the exact same way in response to such a dismissal. Accordingly, we will consider the adequacy of the allegations contained in plaintiffs' original complaint. If we agree with defendants that the complaint failed to state a cause of action, we will affirm the trial court's dismissal of the

RLTO counts with respect to defendants Rouches and Johnstone but will reverse the portion of the dismissal that was "with prejudice," permitting plaintiffs an opportunity to cure any deficiencies in pleading those counts. See *Uskup v. Johnson*, 2020 IL App (1st) 200330, ¶ 36 (affirming dismissal under section 2-615 but reversing "with prejudice" designation because the plaintiffs did not have the opportunity to amend their complaint to cure any deficiencies in pleading).

¶ 71    Count I of the complaint was against all defendants and alleged that defendants violated section 5-12-060 of the RLTO (Chicago Municipal Code § 5-12-060 (amended Nov. 6, 1991)) by making an unlawful entry into the apartment. As noted, section 5-12-060 provides, in relevant part:

> "If the landlord makes an unlawful entry or a lawful entry in an unreasonable manner or makes repeated unreasonable demands for entry otherwise lawful, but which have the effect of harassing the tenant, the tenant may obtain injunctive relief to prevent the recurrence of the conduct, or terminate the rental agreement ***." Chicago Municipal Code § 5-12-060 (amended Nov. 6, 1991).

¶ 72    In the case at bar, defendants Rouches and Johnstone claim that neither was the landlord, and that neither was alleged to have made any unlawful entry into the premises. A "landlord" is defined by section 5-12-030 of the RLTO, which provides:

> " 'Landlord' means the owner, agent, lessor or sublessor, or the successor in interest of any of them, of a dwelling unit or the building of which it is part." Chicago Municipal Code § 5-12-030(b) (amended at Chi. City Clerk J. Proc. 91084 (May 12, 2010)).

Count I of the complaint alleges that "[a]t all times relevant hereto, Defendants were 'Landlords' and/or 'Owners' of the Premises as defined by RLTO Section 5-12-030."

However, count I does not contain any allegations that either defendant Rouches or defendant Johnstone owned the premises, or that either one of them was an agent, lessor, sublessor, or successor in interest to the owner of the premises. Additionally, count I alleges that defendant Urban Realty Works and defendant Parker unlawfully entered the premises to serve plaintiffs with a five-day notice; there is no allegation that either defendant Rouches or defendant Johnstone entered the premises at all. Accordingly, we agree with defendants that count I of the RLTO fails to state a cause of action with respect to defendants Rouches and Johnstone.

¶ 73       Counts II through VI were by each plaintiff against all defendants, and all alleged that defendants violated section 5-12-160 of the RLTO (Chicago Municipal Code § 5-12-160 (amended Nov. 6, 1991)), which prohibited a landlord from interrupting a tenant's occupancy without authority of law. Section 5-12-160 provides, in relevant part:

> "It is unlawful for any landlord or any person acting at his direction knowingly to oust or dispossess or threaten or attempt to oust or dispossess any tenant from a dwelling unit without authority of law, by plugging, changing, adding or removing any lock or latching device; or by blocking any entrance into said unit; or by removing any door or window from said unit; or by interfering with the services to said unit; including but not limited to electricity, gas, hot or cold water, plumbing, heat or telephone service; or by removing a tenant's personal property from said unit; or by the removal or incapacitating of appliances or fixtures, except for the purpose of making necessary repairs; or by the use or threat of force, violence or injury to a tenant's person or property; or by any act rendering a dwelling unit or any part thereof or any personal property located therein inaccessible or uninhabitable." Chicago Municipal Code § 5-12-160 (amended Nov. 6, 1991).

¶ 74    The only factual allegation contained in counts II through VI is that "the Defendants[,] individually or through their agents, forcibly and unlawfully entered the described Premises, and removed and disposed of valuable personal property belonging to Plaintiff." We cannot find that this allegation is sufficient to state a cause of action for violation of section 5-12-160. Plaintiffs do not identify which of the defendants entered the premises, or whether that person was the landlord or was acting at the direction of the landlord; there is also no allegation that defendants Rouches or Johnstone entered the premises and removed plaintiffs' personal property. As with count I, plaintiffs also do not allege that either defendant Rouches or Johnstone owned the property or was an agent, lessor, sublessor, or successor in interest to the owner of the premises, so as to make them the landlord, and do not allege that either defendant was acting at the direction of the landlord. Consequently, we agree with defendants that counts II through VI failed to state a cause of action with respect to defendants Rouches or Johnstone.

¶ 75    In summary, we reverse the trial court's dismissal of counts I through VI of plaintiffs' complaint with respect to defendant Urban Realty Works and the Koulioufas defendants, because the applicable statute of limitations was five years, not two years. We affirm the trial court's dismissal of counts I through VI of plaintiffs' complaint with respect to defendants Rouches and Johnstone because those counts failed to state a cause of action with respect to those defendants. However, we reverse the trial court's designation of the dismissal as being "with prejudice" so that plaintiffs have the opportunity to remedy any defects in their complaint, if they choose to do so.

¶ 76                                II. Conversion Counts

¶ 77    Plaintiffs also appeal the dismissal of counts VII through XI of their second amended complaint, which were dismissed for failure to state a cause of action for common-law

32

conversion. To state a claim for conversion, a plaintiff must establish that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114 (1998) (citing *Western States Insurance Co. v. Louis E. Olivero & Associates*, 283 Ill. App. 3d 307, 310 (1996)). In the case at bar, it is the third and fourth elements that are at issue.

¶ 78        With respect to the third element, defendants claim that plaintiffs failed to allege that any particular plaintiff demanded the return of any property from any particular defendant. Plaintiffs' second amended complaint merely alleges that "Plaintiff *** has demanded possession of the described personal property from Defendants." There are no allegations in the complaint as to when this demand was made, to whom it was made, or how it was made. Consequently, we agree with defendants that this conclusory allegation is insufficient. However, "[a]lthough 'demand' is often cited as [a] necessary element of a conversion action, demand is unnecessary where 'another independent action of conversion is established.' " *Fortech, L.L.C. v. R.W. Dunteman Co.*, 366 Ill. App. 3d 804, 817 (2006) (quoting *Pavilon v. Kaferly*, 204 Ill. App. 3d 235, 248 (1990)). Thus, no demand is required where the item has been sold to a third party (see *Pavilon*, 204 Ill. App. 3d at 248) or where the item ceased to exist because it was used up by the defendant (see *Fortech*, 366 Ill. App. 3d at 817). In the case at bar, plaintiffs' second amended complaint alleges that plaintiff Bobroff's personal property was left outside in the rain, while the other plaintiffs' personal property was thrown into the trash. Thus, the property that was allegedly converted was either disposed of or rendered unusable. Under these circumstances, and in the early pleading stages of the instant litigation,

33

we cannot find that plaintiffs' lack of a specific demand for the return of their property renders their complaint insufficient.

¶ 79    As to the fourth element, we agree with defendants that there are no allegations identifying who was responsible for the removal of plaintiffs' personal property from the apartment. Each allegation concerning the removal of the property merely alleges that "Defendants caused" the personal property to be removed. In a case such as this one, with multiple defendants occupying multiple roles, such a conclusory allegation is insufficient to properly allege that any particular defendant asserted wrongful control over plaintiffs' property. Consequently, the trial court properly dismissed the conversion counts of plaintiffs' second amended complaint.

¶ 80    We are unpersuaded by plaintiffs' contention that all of the motions to dismiss were brought prior to the time of any discovery. While a motion to dismiss occurs early in the proceedings, a plaintiff is still required to allege sufficient facts to state a cause of action, even if those facts may not yet be fully developed through discovery. See *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-30 (2006) (while a plaintiff is not required to set forth evidence in the complaint, the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action, not simply conclusions). Moreover, we note that, in the trial court's order granting plaintiffs until August 23, 2018, to file their second amended complaint, the court also ordered written discovery to be issued within 30 days. Indeed, the record shows that the Koulioufas defendants served their initial discovery requests on August 6, 2018, approximately six weeks before the filing of the second amended complaint. Thus, contrary to plaintiffs' assertion, discovery had, in fact, begun at the time the court dismissed the complaint, even if it was in its early stages. Accordingly, we affirm the trial court's dismissal of the conversion counts of plaintiffs' second amended complaint for failure to state a cause of action.

Since we agree with this ground, we have no need to address the Koulioufas defendants' additional argument that dismissal was appropriate as to them under section 2-619 of the Code.

¶ 81 However, we must emphasize that a dismissal under section 2-615 of the Code occurs at the earliest stages of the litigation. A dismissal under section 2-615 of the Code should be made with prejudice "only where it is clearly apparent that the plaintiffs can prove no set of facts entitling recovery." *Norabuena v. Medtronic, Inc.*, 2017 IL App (1st) 162928, ¶ 39. Here, we have concluded that the trial court properly determined that the complaint, as presently drafted, does not contain sufficient allegations to state a cause of action for conversion, because plaintiffs failed to sufficiently identify who was responsible for removing plaintiffs' personal property from the apartment. However, we are unwilling to say that plaintiffs would be unable to draft their complaint in such a way as to properly allege such a cause of action. If a plaintiff can state a cause of action by amending his complaint, dismissal with prejudice should not be granted. *Buffa v. Haideri*, 362 Ill. App. 3d 532, 540 (2005). Thus, upon remand, if plaintiffs are able to draft their complaint so as to properly state a cause of action, they should be permitted to amend their complaint to do so. Accordingly, as with the RLTO counts, we reverse the trial court's designation of the dismissal as being "with prejudice." See *Uskup*, 2020 IL App (1st) 200330, ¶ 36.

¶ 82                                                  CONCLUSION

¶ 83 For the reasons set forth above, we affirm in part and reverse in part. We reverse the trial court's dismissal of counts I through VI of plaintiffs' complaint with respect to defendant Urban Realty Works and the Koulioufas defendants because the applicable statute of limitations was five years, not two years. We affirm the trial court's dismissal of counts I through VI of plaintiffs' complaint with respect to defendants Rouches and Johnstone because

those counts failed to state a cause of action with respect to those defendants. However, we reverse the trial court's designation of the dismissal as being "with prejudice" so that plaintiffs have the opportunity to remedy any defects in their complaint if they choose to do so. Finally, we affirm the trial court's dismissal of counts VII through XI of plaintiffs' second amended complaint as to all defendants because plaintiffs failed to state a cause of action for conversion, but reverse the designation of the dismissal as being "with prejudice" to permit plaintiffs to remedy the defects in their complaint if they choose to do so.

¶ 84        Affirmed in part and reversed in part.

---

**No. 1-21-0470**

---

| | |
|---|---|
| **Cite as:** | *Mayle v. Urban Realty Works, LLC*, 2022 IL App (1st) 210470 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-L-6322; the Hon. Thomas R. Mulroy Jr., Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Joan M. Fenstermaker and Nicholas Bailey, of Joan M. Fenstermaker, P.C., of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kurt H. Feuer, of Evanston, and Robert T. Metz, of Oak Brook, for appellees Urban Realty Works, LLC, Anthony Rouches, and Eric Johnstone.<br><br>Marc D. Sherman, of Marc D. Sherman & Colleagues, P.C., of Lincolnwood, for other appellees. |

---