2025 IL App (1st) 231744-U
No. 1-23-1744

FIRST DIVISION
April 7, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| KIYONNA CAIN, | ) | Appeal from the Circuit Court |
| | ) | of Cook County pursuant to |
| Plaintiff-Appellee, | ) | Supreme Court Rule 306(a)(2) |
| v. | ) | |
| | ) | |
| RAJA CHATTERJI, M.D., | ) | |
| | ) | |
| Defendant-Appellant | ) | No. 22 L 6802 |
| | ) | |
| (ADVOCATE MEDICAL GROUP; ADVOCATE | ) | |
| SHERMAN HOSPITAL; ADVOCATE AURORA | ) | |
| HEALTH, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| UDAYA BONTU, M.D. and ANDREW WARD, | ) | |
| M.D., | ) | The Honorable |
| | ) | Moira S. Johnson, |
| Respondents in Discovery). | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm the circuit court's order denying defendant-appellant's motion to transfer venue under the doctrine of *forum non conveniens*, as the trial court's weighing of relevant factors did not constitute an abuse of discretion.

¶ 2    In this medical malpractice action, defendant Raja Chatterji, M.D. appeals from the circuit court's denial of his motion to transfer venue under the doctrine of *forum non conveniens*. For the following reasons, we affirm the circuit court.

¶ 3                                    BACKGROUND

¶ 4    This is a medical malpractice action filed in the circuit court of Cook County by plaintiff Kiyonna Cain, who is a resident of Kane County, Illinois.

¶ 5    On January 14, 2021, plaintiff was admitted to Advocate Sherman Hospital (the Hospital), where Dr. Chatterji performed a robotic-assisted laparoscopic myomectomy. Dr. Chatterji is an employee of Advocate Medical Group and has privileges to practice at the Hospital, which is located in Kane County. After the operation, plaintiff allegedly complained of left calf pain, and she underwent tests to evaluate for possible deep venous thrombosis. After the tests, plaintiff was discharged from the Hospital on January 15, 2021, allegedly despite continuing calf pain.

¶ 6    Plaintiff contacted Dr. Chatterji's office on January 21 due to continuing calf pain. It was subsequently discovered she had a pulmonary embolism in the left lung. Plaintiff underwent surgery in June 2021.

¶ 7    In August 2022, plaintiff filed a six-count complaint in the circuit court of Cook County. Count I alleges medical negligence by Dr. Chatterji. Counts II, III and IV were directed against the Hospital, Advocate Medical Group, and Advocate Aurora Health, alleging each of these entities was liable on an agency basis for Dr. Chatterji's acts or omissions.[1] Count V of the complaint alleged *Res Ipsa Loquitur* liability against all defendants. Count VI of the complaint named two physicians as respondents in discovery: Udaya Bontu, M.D. and Andrew Ward, M.D.

---

[1] The record and briefing indicate that there is no legal entity entitled "Advocate Aurora Health." Thus, there are only three defendants at issue: Dr. Chatterji, the Hospital, and Advocate Medical Group.

¶ 8     In November 2022, Dr. Chatterji filed a motion to transfer venue to Kane County pursuant to the doctrine of *forum non conveniens*. In the motion, Dr. Chatterji averred that all of his treatment to plaintiff was rendered in Kane County, either at the Hospital or at "his Medical Group office, located in Elgin, Kane County, Illinois."

¶ 9     In support of his motion, Dr. Chatterji submitted his own affidavit stating that Cook County was an inconvenient forum. He averred that he maintains an office in Kane County and he maintains privileges to practice medicine at the Hospital, which is also in Kane County.

¶ 10    Dr. Chatterji stated that his office is located approximately 13.2 miles from the courthouse in Geneva, Kane County, whereas it is about 42.1 miles from the Daley Center courthouse at 50 W. Washington Street in Chicago. Citing the "dense rush hour traffic" in the Chicago area, Dr. Chatterji stated that a trial in Kane County would permit him to "see and treat patients before and after court hours" and would otherwise be significantly more convenient for him and his practice.

¶ 11    Plaintiff subsequently propounded *forum non conveniens* interrogatories on Dr. Chatterji, the Hospital, and Advocate Medical Group. Notably, in response to plaintiff's *forum non conveniens* interrogatories, Dr. Chatterji stated his home address was in South Barrington, which is in Cook County. There is no dispute that he is a Cook County resident.

¶ 12    Advocate Medical Group's answers to plaintiff's interrogatories indicated that all relevant evidence was located in Elgin, which is in Kane County. In the Hospital's responses to plaintiff's interrogatories, it identified three employees (all nurses) for whom it claimed a trial in Cook County would be inconvenient, citing the relative distances between their home residences and the courthouses in Kane County and Cook County.

¶ 13    In response to plaintiff's interrogatory asking the Hospital to state "all facts" as to why it believed Cook County was an inconvenient forum, the Hospital indicated that venue in Kane

County would be "f[a]r more convenient" for any of its employees. The Hospital stated that it is only 14.1 miles from the Kane County Courthouse, but 41.8 miles from the Daley Center.

¶ 14    In plaintiff's opposition to Dr. Chatterji's motion, she acknowledged that she is a resident of Kane County but argued that her decision to sue in Cook County was still entitled to some deference. She also argued that Advocate Medical Group and related entities have a "pervasive presence throughout Cook County," because they have offices in Cook County and offer services throughout the county.

¶ 15    Emphasizing that Dr. Chatterji was the only defendant to move for transfer, she argued Dr. Chatterji could not meet his burden to show another forum is more convenient to *all* parties, or that the relevant *forum non conveniens* factors "strongly" favored transfer to Kane County. She pointed out that depositions could be taken remotely and that the relevant medical records could easily be produced to counsel electronically.

¶ 16    Plaintiff also emphasized that Kane and Cook are adjacent counties, and that many people commute between them. Plaintiff also noted that "every attorney of record" was from a Chicago-based law firm with offices close to the Daley Center.

¶ 17    Dr. Chatterji filed a reply urging that plaintiff was impermissibly forum shopping, and that her choice of venue deserved little deference since she was not a Cook County resident and the alleged negligence did not occur in Cook County. He maintained that the relevant private interest factors and public interest factors strongly favored transfer to Kane County.

¶ 18    On August 28, 2023, the trial court issued a written order denying Dr. Chatterji's motion, after concluding he did not show that the relevant factors strongly favored transfer to Kane County.

¶ 19    Regarding the level of deference to plaintiff's choice of forum, the court recognized that plaintiff was a resident of Kane County and that the alleged negligence occurred in Kane County.

Thus, the court stated that it would give her choice of Cook County "some, although less, deference." The court proceeded to discuss a number of private interest and public interest factors recognized by our *forum non conveniens* case law.

¶ 20    Regarding the private interest factor of the convenience of the parties, the court took notice that, as recognized in *Petrungaro v. Jayachandran,* 2022 IL App (1st) 220304, Cook County and Kane County are adjacent counties, and many people commute between them every day. The court found "Kane County is just as convenient for the parties as Cook County." The court also noted that other than Dr. Chatterji's own affidavit, he did not present affidavits of inconvenience from any other parties or potential witnesses. The court found this factor "fails to strongly favor transferring the case."

¶ 21    Regarding the private factor of "relative ease of access to evidence," the court likewise found Dr. Chatterji failed to establish Kane County as more convenient. The court found it significant that other defendants had not joined in the motion, and Dr. Chatterji was the only defendant who provided an affidavit regarding inconvenience. The court also noted that in the "current technological era, the ease of access to various documentary and real evidence is easily transferable," such that the physical location of documents was of little significance. The court also noted that evidence depositions and technology could obviate the need for witnesses to appear in-person at trial. Citing "the rise in video conferencing and the minimal differences in the distances the witnesses would need to travel," the court found that a trial in Cook County "would not be inconvenient for the witnesses."

¶ 22    The court otherwise rejected Dr. Chatterji's argument that denial of his motion would encourage forum shopping. While it acknowledged that plaintiffs forum shop, the trial court stated

that "courts may not consider this practice in a *forum non conveniens* analysis." Thus, the trial court did not give any weight to forum shopping in its balancing of the private interest factors.

¶ 23 Turning to the public interest factors, the court found the factors of "the interest in deciding the alleged controversy locally and the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a county with little connection to the litigation" weighed in favor of transfer, but did not "*strongly* favor a transfer" to Kane County (emphasis added). In doing so, it found that both Kane County and Cook County residents "have an interest in the litigation."

¶ 24 Regarding a third public factor, court congestion, the trial court cited data from the 2021 Annual Report of the Administrative Office of Illinois Courts (AOIC). According to the court, the AOIC report indicated that, despite its large case load, "Cook County has consistently been more efficient than Kane County in rendering verdicts and having higher clearance rates," meaning the "time it takes for a case to reach a verdict is faster" in Cook County. The court also noted that although Cook County is nearly 10 times as populous as Kane County, it has a more favorable "case-per-judge ratio," with approximately 400 judges compared to 29 judges in Kane County. Thus, it found that Cook County is a "more efficient forum" than Kane County.

¶ 25 The court concluded that plaintiff's choice of forum prevailed since the relevant factors, viewed as a whole, did not "strongly" favor transfer to Kane County. Accordingly, it denied Dr. Chatterji's *forum non conveniens* motion.

¶ 26 On September 27, 2023, Dr. Chatterji filed in this court a "Petition for Leave to Appeal Pursuant to Illinois Supreme Court Rule 306(a)(2)" as well as a supporting record.[2] This court allowed that petition on November 28, 2023. The parties have submitted briefs.

---

[2] Supreme Court Rule 306(a)(2) authorizes interlocutory appeals "from an order of the circuit court allowing or denying a motion to dismiss on the grounds of *forum non conveniens*." Ill. S. Ct. R. 306(a)(2) (eff. Sep. 30, 2020).

¶ 27                                   ANALYSIS

¶ 28     The sole issue in this appeal is whether the circuit court erred in denying Dr. Chatterji's

motion to transfer the case under the doctrine of *forum non conveniens*.

¶ 29     The determination of a *forum non conveniens* motion "lies within the sound discretion of

the circuit court," meaning its determination will be reversed "only if it can be shown that the court

abused its discretion in balancing the relevant factors." *Evans v. Patel*, 2020 IL App (1st) 200528,

¶ 29. The abuse of discretion standard of review is the most deferential standard of review, such

that "the actions of the trial court will not be disturbed unless they are 'clearly against logic.' " *Id.*

(quoting *Miranda v. Walsh Group, Ltd*., 2013 IL App (1st) 122674, ¶ 16). "[T]he question is not

whether the reviewing court agrees with *** the trial court, but whether the trial court 'acted

arbitrarily *** or whether, in view of all of the circumstances, the court exceeded the bounds of

reason and ignored recognized principles of law so that substantial prejudice resulted.' " *Id.*

(quoting *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 1083 (2000)).

¶ 30     When an appellate court reviews a trial court's *forum non conveniens* order, 'the issue is

not the detail of the underlying order, but whether the circuit court abused its discretion.'" *Ruch v.

Padgett*, 2015 IL App (1st) 142972, ¶ 40 (quoting *Estate of Rath v. Abbott Laboratories, Inc*., 2012

IL App (5th) 100096, ¶ 23). "As a result, we may affirm a trial court's *forum non conveniens order*

on any basis found in the record" whether or not the trial court relied on that basis or its reasoning

was correct. *Id.*, ¶ 40; *Mayle v. Urban Realty Works, LLC*, 2022 IL App (1st) 210470, ¶ 39.

¶ 31     The Illinois venue statute provides: "every action must be commenced (1) in the county of

residence of any defendant who is joined in good faith *** or (2) in the county in which the

transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-

101 (West 2022).

¶ 32    "The doctrine of *forum non conveniens* is an equitable doctrine that assumes the existence of more than one forum with jurisdiction over the parties and the subject matter of a case. [Citation.] Application of the doctrine invokes principles of convenience and fairness in choosing between two or more forums that have jurisdiction." *Griffith v. Mitsubishi Aircraft International, Inc.,* 136 Ill. 2d 101, 105 (1990). The doctrine "allows the court in which the action was filed to decline jurisdiction and direct the lawsuit to an alternative forum that the court determines can better serve the convenience of the parties and the ends of justice." *Evans*, 2020 IL App (1st) 200528, ¶ 31.

¶ 33    In deciding whether to grant a *forum non conveniens* motion for transfer, the circuit court "must evaluate the total circumstances of the case in determining whether the balancing of factors strongly favors transfer." *Id.*, ¶ 32.

¶ 34    Our supreme court has identified relevant "public and private interest factors." *Fennell v. Illinois Cent. R. Co*., 2012 IL 113812, ¶ 17. Private interest factors include "(1) convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; (3) the availability of compulsory process to secure attendance of unwilling witnesses; (4) the cost to obtain attendance of willing witnesses; (5) the possibility of viewing the premises, if appropriate; and (6) all other practical considerations that make a trial easy, expeditious, and inexpensive." *Evans*, 2020 IL App (1st) 200528, ¶ 32 (citing *Fennell*, 2012 IL 113812, ¶ 15). "The public interest factors include: (1) the administrative difficulties caused when litigation is handled in congested venues; (2) the unfairness of imposing jury duty upon residents of a community with no connection to the litigation; (3) and the interests of having local controversies decided locally." *Id.* (citing *Fennell*, 2012 IL 113812, ¶ 16).

¶ 35    It is defendant's burden to show the private and public interest factors "strongly favor" its choice of forum. *Id.* (quoting *Taylor v. Lemans Corp.*, 2013 IL App (1st) 130033, ¶ 16).

¶ 36    Another consideration under the *forum non conveniens* doctrine is "deference to the plaintiff's chosen forum. *Id.*, ¶ 33. "It is assumed on a *forum non conveniens* motion that the plaintiff's chosen forum is a proper venue for the action." *Langenhorst v. Norfolk Southern Railway*, 219 Ill. 2d 430, 448 (2006). "Unless the factors weigh strongly in favor of transfer or dismissal, the plaintiff's choice forum should rarely be disturbed. However, the plaintiff's choice is not entitled to the same weight or consideration in all cases." *Fennell*, 2012 IL 113812, ¶ 18. "Where a plaintiff is not a resident of the county where the incident occurred and [the] incident did not take place in the county, plaintiff's choice is entitled to '*somewhat* less deference.' " *Evans*, 2020 IL App (1st) 200528, ¶ 33 (quoting *Langenhorst*, 219 Ill. 2d at 448 (emphasis in original)).

¶ 37    Applying the *forum non conveniens* factors to this case, we conclude the circuit court did not abuse its discretion in determining that the relevant factors did not *strongly* weigh in favor of transfer to Kane County. Notwithstanding the apparent connections Kane County has to the parties and subject matter of the case, the trial court's weighing of the factors was not unreasonable. See *Langenhorst*, 219 Ill. 2d at 442 (a circuit court abuses its discretion in weighing the *forum non conveniens* factors "only where no reasonable person would take the view adopted by the circuit court").

¶ 38    We first note that, as recognized by the trial court, plaintiff's choice of Cook County as a forum was still entitled to *some* deference, albeit less deference than if plaintiff had been a Cook County resident. See, e.g., *Starr v. Presence Central and Suburban Hospitals Network*, 2024 IL App (1st) 231120, ¶ 20 (circuit court "did not abuse its discretion by affording the Starrs' choice of forum some deference, even though the Starrs do not reside in Cook County and the negligence

they complain of is not alleged to have occurred there"); *Evans*, 2020 IL App (1st) 200528, ¶ 37 (where plaintiff resided in Lake County, her choice to sue in Cook County was "owed some deference," even if none of the alleged negligence occurred in Cook County).

¶ 39    Before we proceed to the balancing of the private and public interest factors, we briefly note Dr. Chatterji's contention that the trial court "should have considered [plaintiff's] improper forum shopping" in weighing the relevant factors. Our case law clearly rejects that proposition. See, e.g. *Starr*, 2024 IL App (1st) 231120, ¶ 19 ("courts are instructed not to consider the practice of forum shopping in their *forum non conveniens* analyses" (citing *Dawdy v. Union Pacific R.R.*, 207 Ill. 2d 167, 175 (2003)); *Evans,* 2020 IL App (1st) 200528, ¶ 33 (while courts acknowledge that plaintiffs may forum shop, "courts may not consider this practice in *a forum non conveniens* analysis."). Thus, we likewise give no weight to forum shopping in assessing the trial court's decision.

¶ 40        The Trial Court's Weighing of the Private Factors Was Not Unreasonable

¶ 41    We thus proceed to the first private interest factor, the convenience of the parties. *Starr*, 2024 IL App (1st) 231120, ¶ 24.  Regarding this factor, Dr. Chatterji urges the trial court "ignored" his affidavit and "arbitrarily determined that Kane and Cook Counties are equally convenient because they are adjacent and connected by roadways." These contentions are unavailing.

¶ 42    The trial court's order explicitly referenced Dr. Chatterji's affidavit of inconvenience, but nonetheless the trial court found the first private interest factor did not "strongly" favor a transfer to Kane County. In doing so, it appropriately noted that Cook County and Kane County are adjacent, and that many people commute between them. See *Petrungaro,* 2022 IL App (1st) 220304, ¶ 31 (taking judicial notice that Kane County is adjacent to Cook County "and that many people commute every day from Kane County to work in Chicago").

¶ 43 In urging the court abused its discretion in considering the private factor of the parties' convenience, Dr. Chatterji directs our attention to two statements within the trial court's order. First, Dr. Chatterji points out that—after noting that the counties are adjacent —the trial court stated that "Kane County is just as convenient for the parties as Cook County." We acknowledge that this suggested *equal* convenience for the defendants, when Dr. Chatterji and the Hospital indicated that Kane County was more convenient for them. Secondly, Dr. Chatterji also urges error based on the trial judge's statement in its order that: "While this Court understands the medical profession can be taxing, this Court ensures that all defendants who appear before the Court are treated equally regardless of the profession in which they have established their career." Dr. Chatterji points out that convenience to the parties is a separate issue from whether they would be treated equally. Nevertheless, these statements (however questionable) do not compel us to find error in the trial court's ultimate conclusion.  Our role is to review the trial court's decision, not its reasoning. See *Rodriguez v. Sheriff's Merit Com'n of Kane County*, 218 Ill. 2d 342, 357 (2006) ("The reasons given for a judgment or order are not material if the judgment or order itself is correct."). Here, it was Dr. Chatterji's burden to show not just that Kane County was more convenient for him, but that the private factors *strongly* favored transfer. The trial court determined that Dr. Chatterji did not show this factor strongly favored transfer to Kane County, notwithstanding his affidavit. On the record before us, we cannot say this was unreasonable.

¶ 44 We acknowledge that Dr. Chatterji's affidavit indicated his ability to see patients would be limited if he was required to drive to and from Chicago for a trial. However, such averments do not require the court to find that the convenience factor *strongly* favors transfer.  For example, in *Evans*, 2020 IL App (1st) 200528, the defendant doctor "averred in his affidavit that, although he resides in Cook County, trial in Lake County would be more convenient for him because his work

and family are in close proximity to the Lake County courthouse than the Daley Center." *Id*. ¶ 41. As in this case, the *Evans* plaintiff was not a Cook County resident, and none of the alleged negligence occurred in Cook County. Nevertheless, this court found: "it cannot be said that [the first private interest] factor strongly weighs in favor of Lake County." *Id.*; see also *Starr*, 2024 IL App (1st) 231120, ¶¶ 25-26 (this private interest factor did not weigh in favor of transfer to Will County, despite affidavits from defendant nurses that they lived and worked in Will County and that a trial in Cook County would interfere with their care of patients).

¶ 45    Here, the trial court could rationally conclude that, notwithstanding Dr. Chatterji's affidavit citing his increased travel time to attend a Chicago trial, it was not so compelling that it strongly weighed in favor of a change in forum. It is worth noting that Dr. Chatterji's affidavit referred to the distance from *his medical practice* to the courthouses, indicating it was 29 miles farther to the Daley Center than to the Kane County courthouse. Interestingly—perhaps because he did not wish to highlight that he is a Cook County resident—Dr. Chatterji's affidavit did not state the distance from his *personal residence* to either courthouse. In his reply brief, Dr. Chatterji now acknowledges there is only about a 14-mile difference between the distance from his home to the Kane County courthouse (20 miles) and the distance to the Daley Center (34 miles).

¶ 46    Dr. Chatterji otherwise suggests the court's weighing of the first private interest factor is inconsistent with the Hospital's responses to plaintiff's interrogatories, in which it stated that Kane County would be "f[a]r more convenient", citing the shorter distance (14.1 miles) from the Hospital to the Kane County courthouse, compared to 41.8 miles from the Hospital to the Daley Center.

¶ 47    Although the trial court did not explicitly discuss the Hospital's interrogatory responses in discussing the first private interest factor, we do not find this renders the court's decision an abuse

of discretion. The Hospital's interrogatory answer did not provide any new or compelling information; it merely stated, in conclusory fashion, that the Kane County courthouse is more convenient because it is about 28 miles closer to the Hospital than the Daley Center. Notably, the interrogatory at issue asked the Hospital to "state *all facts* upon which you base your claim of inconvenient venue", yet the only reason given by the Hospital was geographic distance. As discussed with respect to Dr. Chatterji's affidavit, the mere fact that the Kane County courthouse was closer did not establish that this convenience factor *strongly* favored disrupting plaintiff's choice of forum. Further, the trial court appropriately noted that Dr. Chatterji presented no other affidavit from any other defendant or potential witness describing any other reasons why a Cook County trial would be burdensome. Keeping in mind that it was Dr. Chatterji's burden to demonstrate that the factors strongly favored transfer, we cannot say the trial court abused its discretion with respect to the first private interest factor.

¶ 48    We turn to the second private interest factor, "the relative ease of access to sources of testimonial and documentary evidence." *Evans*, 2020 IL App (1st) 200528, ¶ 43. Notably, in discussing this factor, Dr. Chatterji "takes no issue" with the trial court's conclusion that the geographic location of documentary evidence was of little significance, since modern technology makes such evidence easily accessible regardless of its physical location.

¶ 49    Instead, Dr. Chatterji suggests the trial court abused its discretion in failing to find that the ease of access to testimonial evidence strongly favored transfer to Kane County. He emphasizes that the Hospital's interrogatory responses identified three nurse witnesses for whom Kane County would be more convenient, based on the fact that their home residences in Elgin were closer to the Kane County courthouse than to the Daley Center.[3] He claims the court erred in disregarding that

---

[3] The Hospital indicated that: Sharon Seaman's residence was 13.6 miles from the Kane County courthouse but 39.3 miles from the Daley Center, Kortney Sheran's residence was 14.8 miles from the Kane County courthouse but

information. He also claims that, insofar as the trial court referenced the use of video conferencing to suggest that witnesses might not need to testify in person, it erroneously "suggested that the second [private interest] factor may *never* favor transfer."

¶ 50    We find these contentions unavailing, keeping in mind the deferential standard of review and that our role is to review the correctness of the decision, regardless of the stated reasoning. See *Mayle*, 2022 IL App (1st) 210470, ¶ 39.

¶ 51    We recognize that, after emphasizing that defendant was the only party or potential witness to provide an affidavit, the trial court indicated it would "not take into account" the distances from the three nurse witnesses' homes to the Kane and Cook County courthouses. Although Dr. Chatterji accuses the court of completely ignoring that information, we think the court simply meant that it was not giving much weight to the locations of those three witnesses. In this regard, we note that the very next paragraph of the court's order referenced the "minimal differences in the distances the witnesses would need to travel *** to attend a trial in either county," which indicates the trial court did, in fact, consider the distances at issue but found them insignificant.

¶ 52    Moreover, even assuming *arguendo* that the court failed to consider the information about the three witnesses, such information was not so compelling as to render the trial court's ultimate decision an abuse of discretion. See *Rodriguez v. Sheriff's Merit Com'n of Kane County*, 218 Ill. 2d 342, 357 (2006) ("The reasons given for a judgment or order are not material if the judgment or order itself is correct.") The Hospital's interrogatory responses merely disclosed that three possible witnesses (whose level of involvement in the case is unclear) resided in Elgin, roughly 25 miles closer to the Kane County courthouse than to the Daley Center. Neither the Hospital nor any of the witnesses themselves gave any other particular reason why it would be burdensome to attend

41.6 miles from the Daley Center, and Brenda Graciano's residence was 14.6 miles from the Kane County courthouse but 37.2 miles from the Daley Center.

a trial in Cook County, assuming that their in-person attendance would even prove necessary. Keeping in mind it was Dr. Chatterji's burden to show the need for transfer, we cannot fault the court for failing to be convinced by the sparse information supplied about these witnesses.

¶ 53    This leads us to Dr. Chatterji's criticism that, in referencing the "rise in video conferencing," the trial court suggested that the second private interest factor will never favor transfer. Dr. Chatterji urges that, despite the availability of video evidence depositions or the remote presentation of testimony, the court failed to consider the physical distance between a witness and the courthouse. He maintains that since the three named potential witnesses resided in Kane County, the second factor "weighs heavily in favor of transfer."

¶ 54    This argument is unavailing. First, the trial court did not suggest that modern technology means the second factor can *never* weigh in favor of transfer. Rather, the court appropriately recognized that the availability of such technology could ease the burden on potential witnesses, perhaps obviating the need for one or more of them to travel to Cook County to appear in court. See *Evans*, 2020 IL App (1st) 200528, ¶ 43 (in discussing second private interest factor, agreeing that "a good number of potential witnesses will not testify in person and those that do will likely testify via videotaped evidence deposition."). Notably, the record offers little information about the three potential nurse witnesses. The Hospital merely disclosed their names and the locations of their residences but did not discuss what any of them might testify to. And as noted by the trial court, none of the three potential witnesses submitted an affidavit. Thus, there was scant information from which the trial court could assess how likely it was that any of them would need to testify in person, let alone how burdensome it would be for them to attend trial. Keeping in mind it was Dr. Chatterji's burden to establish that the relevant factors strongly favored transfer,

we cannot say the trial court erred in finding he failed to do so, with respect to the relative ease of access to evidence.

¶ 55    We turn to Dr. Chatterji's contentions that the trial court erred in finding that the remaining private interest factors—including the "cost to obtain attendance of willing witnesses," the "possibility of viewing the premises" and "all other practical considerations that make trial of a case easy, expeditious and inexpensive" (*Evans*, 2020 IL App (1st) 200528, ¶ 32)—did not weigh strongly in favor of transfer to Kane County. We find these claims of error unavailing.

¶ 56    Dr. Chatterji suggests that the "cost of attending willing witnesses" weighs strongly in favor of transfer, due to the time and costs of traveling from Kane County to Cook County. He suggests this is especially important for medical providers, whose practices may be disrupted by increased travel time. As support, he cites *Monteagudo v. Gardens of Belvidere, LLC*, 2023 IL App (1st) 220045, a nursing home negligence action in which our court reversed denial of a motion seeking transfer from Cook County to Boone County. See *id*. ¶ 49 (noting that since plaintiff's decedent's medical providers lived or worked or in Boone County or Winnebago County, a trial in Cook County would disrupt their practices and professional responsibilities).

¶ 57    We acknowledge that the trial court order did not explicitly discuss the "cost to obtain attendance of willing witnesses," which is one of the private interest factors. *Evans*, 2020 IL App (1st) 200528, ¶ 32. Nevertheless, it is apparent that Dr. Chatterji's argument on this factor essentially repeats his argument on the first private interest factor; *i.e*., that he will face increased travel time to attend trial at the Daley Center, compared to the Kane County courthouse. However, as discussed *supra*, the trial court could reasonably find that, notwithstanding the statements in Dr. Chatterji's affidavit, the longer drive to Cook County was not so burdensome that it strongly favored transfer. Moreover, his reliance on *Monteagudo,* 2023 IL App (1st) 220045, is unavailing.

That case is easily distinguishable, as it involved transfer to a county *not* adjacent to Cook County, and the witnesses would have to travel much farther distances to attend a trial in Chicago compared to the distances at issue in this case. See *id*. ¶¶ 10-11 (defendant care facility attached affidavits from four employees that they lived between 76.2 and 87 miles from the Daley Center; four treating physicians' workplaces were between 84.5 and 87.4 miles from the Daley Center).

¶ 58    We acknowledge Dr. Chatterji's reliance on *Hale v. Odman,* 2018 IL App (1st) 180280, a wrongful death action arising out of a vehicle collision, in which we held that transfer to Kane County was appropriate. There, we found the cost of attaining willing witnesses favored transfer to Kane County where the "majority of the witnesses either lived or worked in Kane and neighboring counties." *Id*. ¶ 46.  However, we do not find *Hale* controlling for a number of reasons. Its facts are distinguishable because the accident occurred in Kane County and *both* parties were Kane County residents, whereas here Dr. Chatterji is a Cook County resident. Further, the parties in *Hale* identified "almost 30 potential witnesses." *Id*. ¶ 7. All five witnesses to the accident resided in either Kane or DuPage County, *id*. ¶ 5, and defendant submitted affidavits from two of those witnesses stating Cook County would be inconvenient.  *Id*. ¶ 7. In this case, only three potential witnesses (other than Dr. Chatterji) were identified, and none of them provided affidavits that Cook County would be inconvenient, if they were called to testify. Keeping in mind the deferential standard of review and that it was Dr. Chatterji's burden to show the need for transfer, we cannot say the court abused its discretion in declining to find that the cost to obtain attendance of willing witnesses strongly favored transfer.

¶ 59    Dr. Chatterji also suggests the trial court erred by failing to address the private interest factor of "the possibility of viewing the premises, if appropriate." *Evans*, 2020 IL App (1st) 200528 ¶ 32.  He does not suggest there would be any need for a jury to make such a visit in this case.

However, he notes the language in *Monteagudo* that "in a case based on medical negligence \*\*\* viewing the premises may not be necessary. However, this factor 'is not concerned with the *necessity* of viewing the site of the injury, but rather is concerned with the *possibility* of viewing the site, if appropriate.' " *Monteagudo*, 2023 IL App (1st) 220045, ¶ 48 (quoting *Dawdy*, 207 Ill. 2d at 178 (Emphases in original)).

¶ 60    His reliance on this factor is unconvincing. There is no dispute that the site of the alleged medical negligence was in Kane County, where plaintiff was treated. Yet, we cannot fault the trial court for failing to give any weight to this private interest factor, where Dr. Chatterji has not alleged or sought to prove any significant possibility that in this medical malpractice case, a jury would *ever* have reason to attend the site of plaintiff's treatment to assess her claims of negligence. This is a very different situation from a vehicle accident case, where it is much more plausible that a jury could visit the site. See, e.g., *Hale,* 2018 IL App (1st) 180280 ¶ 44 (finding the possibility of viewing accident site in Kane County should not have been given little weight, and this factor strongly favored transfer).

¶ 61    With respect to the final private interest factor, Dr. Chatterji does not identify any other "practical considerations that make a trial easy, expeditious, and inexpensive" (*Evans*, 2020 IL App (1st) 200528 ¶ 32) that the trial court failed to consider. Moreover, although the location of attorneys is given "little weight" in the analysis, there is no dispute that all of the parties' attorneys were located in Chicago. See, e.g., *Hale*, 2018 IL App (1st) 180280, ¶ 47 (trial court properly decided that location of attorneys' offices "favored Cook County but carried little weight").

¶ 62    On the record before us, we cannot say the trial court abused its discretion in failing to find that the private interest factors *strongly* favored transfer.

¶ 63    The Trial Court Did Not Abuse Its Discretion in Weighing the Public Factors

¶ 64    We turn to address the trial court's weighing of the three public factors: "(1) the administrative difficulties caused when litigation is handled in congested venues; (2) the unfairness of imposing jury duty upon residents of a community with no connection to the litigation;  (3) and the interests of having local controversies decided locally." *Evans*, 2020 IL App (1st) 200528, ¶ 32. Here, the trial court found that the latter two factors favored (but did not strongly favor) transfer to Kane County, and that the court congestion factor favored Cook County. We do not find that this was an abuse of discretion.

¶ 65    In arguing otherwise, Dr. Chatterji asserts the trial court erroneously found that Cook County residents had an interest in the case merely because the case was filed in Cook County. We acknowledge that the trial court stated that "Cook County citizens have [an] interest in the litigation" because plaintiff "filed the Complaint in Cook County." We agree with Dr. Chatterji that our case law does not indicate that the mere filing of a complaint in a county means the residents of that county have an interest in the case, for purposes of the public interest factors.

¶ 66    However, we again point out that our role is to review the ultimate decision, regardless of the correctness of the trial court's stated reasoning. See *Rodriguez*, 218 Ill. 2d at 357. Thus, we may affirm on any grounds appearing in the record. *Ruch*, 2015 IL App (1st) 142972, ¶ 40. Here, the record supports the trial court's ultimate conclusion that the public interest factors favored, but did not *strongly* favor, transfer from Cook County.

¶ 67    As noted by plaintiff, the record shows that Cook County had at least *some* interest in the litigation because Dr. Chatterji is a Cook County resident, despite that he treated plaintiff in Kane County. Moreover, Dr. Chatterji does not dispute that he and the other defendants treat Cook County residents. This gives Cook County some interest in the litigation, even if the alleged negligence in this case did not occur there. See, e.g. *Pierce v. Cherukuri*, 2022 IL App (1st)

210339, ¶¶ 51-52 (although alleged negligence occurred in other counties, since defendants "have offered medical care to Cook County residents, Cook County has an interest in the litigation. [Citations.]"). Thus, with respect to the factor of having local controversies decided locally, "the circuit court did not abuse its discretion to conclude that this factor favored, rather than strongly favored, transfer." See *id*. ¶ 51.

¶ 68    The same reasoning applies to the public interest factor of "the unfairness of imposing jury duty upon residents of a community with no connection to the litigation." *Evans*, 2020 IL App (1st) 200528, ¶ 32. That is, although Kane County's connection to the case was indeed stronger, the trial court could reasonably find that Cook County still had *some* connection to the litigation.

¶ 69    In finding that the three public interest factors did not *strongly* favor Kane County, the trial court emphasized that the third factor, court congestion, actually favored Cook County as a more efficient venue. In doing so, it relied on statistics from the AOIC showing that Cook County has a more efficient clearance rate than Kane County, despite its much larger docket. Significantly, Dr. Chatterji does not take issue with the accuracy of the information cited by the trial court regarding court congestion. That is, he effectively concedes that this particular factor *does* favor plaintiff's chosen forum, Cook County. However, he claims that the trial court placed too much emphasis on this "relatively insignificant factor" when the "other factors weigh strongly" in favor of transfer to Kane County.

¶ 70    Keeping in mind the deferential standard, we cannot say the court's weighing of the three public interest factors was so illogical as to constitute an abuse of discretion. In essence, the court found that two of the three factors favored (but did not strongly favor) Kane County, and the third factor (court congestion) favored Cook County. Thus, on balance, the trial court concluded that

Dr. Chatterji did not meet his burden to show that they strongly favored transfer to Cook County. We cannot say no reasonable person would agree with that determination.

¶ 71    We thus determine that the trial court did not abuse its discretion in finding that Dr. Chatterji failed to meet his burden to show that the relevant private and public interest factors strongly favored his desired forum, Kane County. *Evans*, 2020 IL App (1st) 200528, ¶ 32. In doing so, we recognize that another trial court might have weighed the relevant factors differently and granted the motion to transfer. Yet, we reiterate our supreme court's instruction that "[a] circuit abuses its discretion in balancing the relevant factors only where no reasonable person would take the view adopted by the circuit court." *Langenhorst*, 219 Ill. 2d at 442. On the record before us, we cannot say that no reasonable person would agree with the trial court's weighing of the factors. Thus, we affirm.

¶ 72                          CONCLUSION

¶ 73    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 74    Affirmed.